## BANCHOR *versus* CILLEY, *Executrix.*

38 553
87 521

Two persons keeping a public house together, making bills and purchases in the management of their house in the name of both, are not necessarily *partners.*

Where the owner of goods living and having his place of business in Massachusetts, sends his clerk into this State to obtain orders, and a memorandum is here given to him for goods of a greater value than thirty dollars, which he agrees shall be supplied, and which are subsequently sent by the owner, the *sale* is not perfected until the owner has put them up and actually parted with their possession.

Under such circumstances, the sale is in Massachusetts, and whether the articles could be lawfully sold, must be tested by the laws of that State.

ON FACTS AGREED.

ASSUMPSIT, on account annexed for sundry liquors and cigars, amounting to $134,00.

The plaintiff resided and kept a store in Boston, Massa-

chusetts. The defendant's testator kept a public house in Corinth in the county of Penobscot, with one Alanson Carey.

In March, 1849, a clerk of plaintiff's was at their public house soliciting orders for liquors and other goods, and Cilley, defendant's testator, there, in presence of Carey, made a memorandum of the kind and quantity of goods to be sold by plaintiff, and sent to Corinth, for and on account of said Cilley and Carey. They were the same as charged. The clerk took the order and agreed that plaintiffs should sell them to Cilley and Carey. The goods were subsequently sent by plaintiff and received by them.

Both Cilley and Carey, in the management of their public house, made bills and purchases in their name.

Cilley is dead, and defendant is his executrix. Carey is still living.

If the action can be maintained, defendant is to be defaulted; otherwise plaintiff is to be nonsuited.

*A. Sanborn,* for defendant.

1. A co-partnership existed between Cilley and Carey, and the action should have been brought against the latter.

2. The sale was made in Maine, and was illegal, being in violation of c. 205, § 10, of statute of 1846.

3. Carey alone is liable, Cilley having died before the sale was perfected.

*Ingersoll,* for plaintiff.

TENNEY, J. — The executrix of the last will and testament of Jacob Cilley is called upon in this action for the payment of the account annexed to the writ, a part of which is for spirituous liquor of domestic manufacture. The defence is upon two grounds; 1st, that the purchase was made by the defendant's testator and one Carey, as co-partners in the business for which the goods were obtained; and 2d, that a part of the same goods were sold in violation of the statute of 1846, c. 205, § 10.

It is very clear, if such co-partnership between Cilley and

Carey did exist at the time of the purchase, and the purchase was made by that firm, that no action can be maintained against the defendant as the representative of Cilley, the deceased partner. Story on Part. § 361, and cases cited. On the other hand, if the goods were purchased by the testator alone, or by him and Carey not as partners, but in a joint contract of both, the plaintiff is entitled to recover, if the action is sustainable on other grounds. R. S., c. 115, § 23.

It becomes important therefore to determine, whether the defendant's testator and Carey were co-partners in the purchase. "Partnership is a contract of two or more persons, to place their money, effects, labor and skill, or some or all of them in lawful commerce or business, and to divide the profits and bear the loss in certain proportions." 3 Kent's Com., Lecture 43, pages 2 and 18 in 1st ed. "There must be a communion of profit to constitute a partnership, as between the parties. They must not be jointly concerned in the purchase only, but jointly concerned in the future sale." *Ibid.* 3. "The communion of profit and loss, is the true test of partnership," *Cooper* v. *Eyre*, 1 H. B. 37, and there must be a community of interest in the subject matter of it. *Dwinal* v. *Stone*, 30 Maine, 384.

The statement of facts on this point, show only, that Cilley and Carey were keeping a public house; that the former in the presence of the latter made a memorandum or order for goods, in quantity and quality specified in the account upon which the suit is brought, with the request, to one Bayden, the plaintiff's clerk, who was soliciting orders for liquors and other goods, that they should be sent to Cilley and Carey, and that both Cilley and Carey made bills and purchases in the management of their house in the name of Cilley and Carey. If Cilley and Carey can be considered as the purchasers of the goods, they are not by these facts brought within the definition of a co-partnership as between themselves. And as the plaintiff does not assume, that a co-partnership did exist between

them, it is immaterial to inquire, whether they can be treat-ed as partners with third persons.

2. Statute of 1846, c. 205, § 10, provides "that no action shall be maintained, on any claim or demand, made, had or given, in whole or in part, for any wine, brandy, rum or other strong or spirituous liquors, or mixed liquors, a part of which is spirituous, in violation of the provisions of this Act." To prevent a recovery, the sale must have been made in a place, in which the parties were affected by this Act. "When a bargain is made and rendered binding, by giving earnest, or a part delivery, or by a compliance with the re-quisites of the statute of frauds, the property, and with it the risk, attaches to the purchaser." "Delivery of goods to a carrier or master of a vessel, when they are to be sent by a carrier or master, is equivalent to a delivery to a pur-chaser." "A delivery by the consignor of goods, on board of a ship, chartered by the consignee, is a delivery to the consignee; and the rule is the same, if they were put on board a general ship for the conveyance." 2 Kent's Com. 292, 293. "A merchant in America orders goods to be pur-chased for him in England; in such a case the law of England ought to govern, for there the final assent is given by the person who receives and executes the order of his corre-spondent. And when the purchase is made by an agent, without orders, and is ratified afterwards, the ratification is of the purchase, and relates back to the time of the pur-chase." Story's Conflict of Laws, § § 285 and 287. To make it a sale, there must be a delivery and an acceptance, actual or constructive; and it is not perfect, when any thing remains to be done to constitute a parting of the property by the vendor, and an acceptance by the vendee. In *Carter & al.* v. *Toussaint*, 5 B. & A. 855, BAYLEY, J., says, "there can be no acceptance or actual receipt by the buyer, unless there be a change of possession, and unless the seller di-vests himself of the possession of the goods, though but for a moment, the property remains in him." The case here cited was one where the value of the goods was

Banchor *v.* Cilley.

above the value of £10, and the statute of frauds was applicable.

Bayden, though the clerk of the plaintiff, did not profess to act as his agent, and if it had been otherwise, the value of the goods being more than thirty dollars, on no principle was a sale perfected, when the order was taken at Corinth. The testator gave him a memorandum or order for the kind of goods, in quantity and quality specified in the account, *to be sold by the plaintiff;* and Bayden agreed, that the plaintiff *should sell* the goods, put them up in Boston, and send them to Cilley and Carey at their risk. The goods were afterwards sent by the plaintiff, and received and accepted.

Until the plaintiff had consented to sell the goods, had put them up, and actually parted with them, by sending them, he could not be regarded as having sold them; and before all that was done he was under no obligation to part with them. When they were sent the sale was perfect, the goods being such as were ordered. And this consummation was in Boston, which must be regarded in law as the place of purchase. *Torry* v. *Corliss*, 33 Maine, 333.

The sale of the goods having been made out of this State, it was not a violation of the law invoked in defence. *Torry* v. *Corliss*, before cited.

The point taken in defence, that Cilley died before the sale of the goods was made complete, is not supported by the facts of the case, the time of his death not appearing.

*Defendant defaulted.*

SHEPLEY, C. J., and HOWARD and HATHAWAY, J. J., concurred.