## Illinois Terra Cotta Lumber Co. v. W. B. Owen.

1. SALES—*Where Made.*—A person who resided and did business at Hobart, Indiana, received at that place an order by mail, for goods, from a party residing and doing business in Chicago, Illinois, which he accepted in Indiana, and filled by delivering the goods free on board cars at Hobart, Indiana, consigned to purchaser at Chicago. This was held to be a sale in Indiana, at the place where the orders were accepted, and the minds of the parties met.

**Assumpsit,** upon a contract in writing. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 11, 1896.

CRATTY BROS., GRAY, MACLAREN, JARVIS & CLEVELAND, attorneys for appellant.

In the construction of the contract sued on, we invoke the following rules:

The subject-matter of the contract is to be fully considered. 2 Parsons on Contracts (7th Ed.), 499.

The various provisions of the contract must be construed together, so if possible all its words shall have some effect. McCarty v. Howell, 24 Ill. 341; Schneider v. Turner, 130 Ill. 28; 1 Kinney's Digest, 547.

Each part of the contract must be construed in view of the other parts. Stout v. Whitney, 12 Ill. 218.

Force and effect should be given to all the words employed by the parties that is possible. Bowman v. Long, 89 Ill. 19.

The situation of the parties at the time, and of the property which is the subject-matter of the contract, and the intention and purpose of the parties making the contract

should be taken into consideration. 2 Parsons on Contracts, 419.

The contract should be construed *contra proferentem*, that is, against him who gives or undertakes or enters into the obligation. 2 Parsons on Contracts (2d Ed.), 506.

Where the language is ambiguous, it should be construed most strongly against the party who uses it, regard being had, however, to the apparent intention. McCarty v. Howell, 24 Ill. 341.

Where, upon the words used, the intention is doubtful, such extrinsic facts as were in view of the parties when the contract was made, are to be considered, in order that the court may stand in the position of the parties. Doyle v. Teas, 4 Scam. 202; 1 Kinney's Digest, 208.

The word "sale" as commonly used by courts and law writers, and as legally defined, signifies a contract of sale, an executory sale, and does not necessarily mean an executed sale. 21 Am. & Eng. Enc. of Law, 446, "Definition;" same, 488, Sec. b; 634, Sec. b, "Separation and Measurement;" 635, Sec. c, "Delivery by Installments;" 636, Sec. d, "Payment," etc.; 640, Sec. 5, "By Installment;" 643, Sec. f, "Sales to Arrive;" 644, Sec. 5; Kent's Comm. (13th Ed.), *468; Dunlap v. Berry, 5 Ill. (4 Scam.) *327, *331–332; Wade v. Moffett et al., 21 Ill. 110, 111, 112; Bell v. Farrar, 41 Ill. 400, 404.

Where the contract first became binding, where the minds of the parties to the contract first met, is the place of the making of the contract or sale, though performance is to be made elsewhere. Levy v. Bohen, 4 Ga. 1; Blackman v. Jenks, 55 Barb. (N. Y.) 468; Rindskopf v. DeRuyter, 39 Mich. 1; De Costa v. Davis, 4 Zab. (24 N. J. Law) 319; Schuenfeldt v. Junkerman, 20 Fed. Rep. 357; 3 Am. & Eng. Ency. of Law, 547; Mactier & Frith, 6 Wend. (N. Y.) 103; Brisban v. Boyd, 4 Paige (N. Y.) 17; Tegleroho v. Shipman, 33 Iowa 194.

Where a proposition, made by one to another, is accepted by letter mailed, the contract becomes binding the moment the letter is posted, and the place of mailing such acceptance, is the place of the making of the contract. 3 Am. &

Eng. Ency. of Law, 547; Vol. 21, 452 and 453, note 1; Anson on Contracts (2d Am. Ed.), 28; Addison on Contract, *861, *862; Moore v. Pierson, 6 Iowa 279; Levy v. Cohen, 4 Ga. 1; Abbott v. Shepard, 48 N. H. 14; Ferrier v. Storer, 63 Iowa 484.

FRANK P. LEFFINGWELL, attorney for appellee.

The plaintiff was not entitled to recover a verdict, for the reason that the porous tile, manufactured and sold by the defendant, was not the same production as that covered by the contract between the plaintiff and the defendant.    U. S. Rev. Stat. Secs. 4886–4890.

Owen did not sell the tile within the State of Illinois.    1 Benj. Sales, Sec. 1, notes; 2 Kent (12th Ed.) 468; 2 Blackstone, 446; 1 Benj. Sales, Sec. 348 *et seq.*, *260; Dunlap v. Berry, 4 Scam. 327; Low v. Freeman, 12 Ill. 467; Pearson v. State, 66 Miss. 510; Brinker v. Scheunemann, 43 Ill. App. 659; Orcut v. Nelson, 1 Gray (Mass.) 537; McIntyre v. Parks, 3 Metc. 207; Kline v. Baker, 99 Mass. 253; Banchor v. Cilley, 38 Me. 553; Hobbie v. Jennison, 149 U. S. 355.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit brought to recover under the provisions of a certain contract, which is in part as follows:

" This article of agreement, made and entered into this May 13th, A. D. 1887, by and between the Illinois Terra Cotta Lumber Company, a corporation organized and existing under and by virtue of the laws of the State of Illinois, residing and doing business in the county of Cook, in the State of Illinois, party of the first part, and W. B. Owen, a resident of the town of Hobart, in the county of Lake, in the State of Indiana, party of the second part, witnesseth, that,

Whereas, the party of the second part is desirous of obtaining the right, privilege and immunity to sell or apply, or to sell and apply, within the State of Illinois, such pro-

duction known as terra cotta lumber, or porous earthenware, under and in pursuance of such letters patent of the United States of America, or either of them.

Now, therefore, the party of the first part, in considera- tion of the payments to be made, and the covenants and agreements to be performed, as hereinafter set forth, on the part of the party of the second part, hereby bargains, sells, assigns, transfers, conveys and makes over to the party of the second part the right, privilege and immunity to sell or apply, or to sell and apply, within the State of Illinois, such production known as terra cotta lumber, or porous earthen- ware, during the life of the said letters patent, or either of them, or any renewal or renewals thereof, subject to the conditions hereafter contained.

In consideration of which the party of the second part, for himself, his heirs, executors, administrators and assigns, hereby covenants and agrees to, and does, acknowledge the validity of all of such letters patent, and binds himself, his heirs, executors, administrators and assigns, to not, at any time hereafter, in any manner or form, question, resist or contest the validity of such letters patent, in any court of record of the United States of America, or otherwise; also hereby further covenants and agrees that he will, at once, commence to sell or apply, or to sell and apply, or to make all reasonable efforts to sell or apply, or to sell and apply, within the State of Illinois, such production known as terra cotta lumber, or porus earthenware, and will thereafter, during the existence of this agreement, continue to sell or apply, or to sell and apply, or to make all reasonable efforts to sell or apply, or to sell and apply, within the State of Illinois, such production, known as terra cotta lumber, or porus earthenware, to the extent that his facilities and oppor- tunities may enable him to do; that he will, at all times, keep complete and accurate books of account, showing the number of tons of such production known as terra cotta lum- ber, or porous earthenware, sold by him within the State of Illinois, and will, upon the last day of each and every month during the existence of this agreement, report to the party

of the first part the number of tons of such production known as terra cotta lumber, or porous earthenware, sold or applied, or sold and applied, by him, within the State of Illinois, such month, and will, at the same time, pay to the party of the first part, one dollar ($1) for each and every ton thereof so sold or applied, or sold and applied, by him, within the State of Illinois during such month.

In witness whereof, the party of the first part has caused this agreement to be signed by its president and attested by its secretary, with the corporate seal affixed, and the party of the second part has hereunto set his hand and seal the day and year first above written.

The Illinois Terra Cotta Lumber Company,

By C. W. Brega, Vice President.

W. B. Owen.

Attest: Quin Johnstone, Secretary."

After talk in Chicago, with a Chicago party, the talk being so indefinite that it did not amount to an agreement, appellee, who resides and does business at Hobart, Indiana, there received from the Chicago party, orders sent by mail for " terra cotta lumber," which orders were in Indiana accepted and filled by delivering the materials free on board the cars at Hobart, consigned to the purchaser in Chicago.

This was clearly a sale in Indiana, the place where the orders were accepted and where the minds of the parties met.

The contracts were such that performance was to be made in Indiana. The undertaking of appellee was to deliver lumber " f. o. b." at Hobart, Indiana.

Appellee neither sold nor applied any material in Illinois. The purchaser might, had he seen fit, have sent the goods to Canada or Alaska, and there applied them.

Concerning the application of the terra cotta, appellee made no undertaking and took no action. Sales made in Indiana are not covered by the contract; it was not a license to make, sell or use in Indiana, or an agreement to pay for such making, sale or use.

The opinion of Judge Adams, before whom the cause was

tried, sufficiently states the law applicable to the case, and is adopted.    That opinion is as follows:

" The contract between the parties recites that the plaintiff is the owner of the patented invention in question within the State of Illinois, and that the patent covers the right to manufacture and sell, or to manufacture, sell, and apply, a certain production known as terra cotta lumber or porous earthenware, the composition of which is described in the contract.

The plaintiff by the contract grants to the defendant the right to sell or apply, or to sell and apply within the State of Illinois, said preparation during the life of the letters patent, or any renewal or renewals thereof.

The defendant agrees among other things that he will upon the last day of each month, during the existence of the agreement, report to the plaintiff the number of tons of such production sold or applied, or sold and applied by him, the defendant, within the State of Illinois, during such month, and will, at the same time, pay to the plaintiff one dollar for each and every ton thereof so sold or applied, or sold and applied by him within the State of Illinois during such certain month.

The defendant, by his counsel, contends that the evidence for the plaintiff does not show that the defendant either sold or applied any of the production in question within the State of Illinois.

· Of course it is material to the plaintiff's case to show that he, the defendant, sold or applied some of his production within the State of Illinois.

The evidence as to the sales is as follows :    Mr. Johnson, who was the general manager of the Pioneer Fire Proof Construction Company, testifies that he had a conversation with the defendant at the office of the company in Chicago, in which the prices of said production manufactured by the defendant were stated, but no amount of the production was agreed on.    All that can be gathered from this witness is, that he was informed by the defendant of the price or prices at which he would sell free on board at Hobart, Indiana.

Subsequently the Pioneer Company sent a number of orders by mail to the defendant to Hobart, Indiana, for quantities of the production to be by him delivered free on board the cars at Hobart, Indiana. The defendant, in response to these orders, delivered the material ordered free on board cars at Hobart, Indiana, consigned to the Pioneer Company, Chicago.

The defendant's counsel contends that the orders having been accepted and the material delivered at Hobart, Indiana, that place and not Chicago or Illinois, was the place of sale.

It is admitted by plaintiff's counsel that by the agreement between the Pioneer Company and the defendant, the material ordered was all to be delivered free on board at Hobart, Indiana. The orders were not for any specific lumber, but for so much lumber of a certain kind to be taken from the lumber manufactured by the defendant at Hobart, Indiana.

Do these facts show a sale within the State of Illinois? In order to entitle the plaintiff to recover there must have been an actual sale within this State. Was there such a sale?

There is a clear distinction between an executory contract for a sale, and a sale.

Benjamin on Sales, page 237 : ' After a contract of sale has been formed the first question which suggests itself is, naturally, what is its effect.' * * * ' The contract is only executory when the goods have not been specified, or if, when specified, something remains to be done to them by the vendor—either to put them in different deliverable shape or to ascertain the price.'

Dunlap v. Berry, 4 Scam. 327 to 331 : It is not necessary to read this whole case. Here was a sale of bricks sold by the thousand, the bricks being in the kiln of the vendor. The court say, ' the language of the third instruction is that if the bricks were sold by the thousand,' etc. (to and including the words ' virtual delivery of the lot sold.').

. Low v. Freeman, 12 Ill. 467 : The agreement here was

this :    ' That Samuel Freeman and Richard Freeman have this day sold to William R. Low eight hundred bushels of grain,' etc. (reading to the words ' did not show a sale of the property in controversy ').

These cases are read for the purpose of illustrating the distinction between an executory agreement for a sale and an actual sale, and the court go on :    ' The subject-matter of contract was grain generally, and not any particular grain' (reading from Low v. Freeman, to the words ' delivery of grain ').

38 Maine 553 :   It is not necessary for me to state this case or to read it in full, but certain parties were living in Maine, and a clerk of the plaintiff, clerk of the vendor, took an order from parties living in Maine for certain goods, the clerk's employer residing in Massachusetts, and the Massachusetts man accepted the order and sent on the goods, and the question was whether that was a sale in Maine or in Massachusetts.    The court say:    ' Until the plaintiff had consented to sell the goods and put them up and actually parted with them by selling them, he could not be regarded as having sold them, and before all that was done, he was under no obligation to part with them.    When they were sent the sale was perfected, the goods being such goods as ordered, and this contract was made in Boston, which must be regarded in law as the place of purchase,' which is the same thing as saying the place of sale.

I regard the case of Hobbie v. Jennison, 149 U. S. Reports 355, as decisive of the question here.

It has been admitted here that the rule is substantiated as stated by the court, that is, as between the vendor and vendee, but ask to apply a different rule as between the plaintiff and this defendant.

When the question is whether there was a sale or not, I understand that the general principles of law must be applied. If it was a sale it was a sale, no matter who are the parties or what are the interests involved.

Now, in the case of Hobbie v. Jennison, 149 U. S. 355, it was an action between patentee, who claimed the right, and

a party over in Detroit, Michigan; he claimed that his right had been infringed, and the court applied the same rule precisely as is applied between vendor and vendee. That case is precisely like this, with one exception. The purchaser lived in Hartford, Connecticut. He wrote to a party living in Bay City, Michigan, ordering certain goods. This party in Bay City, Michigan, had a license from the patentee to sell in Michigan. At Bay City, Michigan, he filled the orders and sent the goods on to Hartford, knowing at the time that they were intended for his use and would be used in Hartford, and the question upon which the case turned was this—and it was the only question in that case: Was this a sale in Hartford, Connecticut, or was it a sale in Michigan? And the court held that it was a sale in Michigan.

Now the fact that the party in Michigan had a license to sell there, does not materially affect the case so far as its applicability to this case is concerned, because the owner of the patent here in this suit, the plaintiff, had no rights over in Indiana, and the question whether the defendant had a right to sell there as against the patentee, is wholly immaterial to me. He can not question his right to sell in Indiana, because he has no right there himself.

With regard to the word 'apply,' I am utterly unable to conceive what the framer of the contract intended by the use of the word 'apply,' in this contract, because after the party had sold the production in the State of Illinois, anybody to whom he sold it could apply it in the State of Illinois or anywhere else. I can give no meaning except this: He might make a contract with a corporation or an individual here to put up, to place in position this material himself, and the word 'apply,' would have effect there; but still it is unnecessary in the contract, because if he should contract with an individual or corporation to put the material in place, it would be included within the terms of sale because by his contract he would be charged both for labor and material.

I am of opinion that the evidence is wholly insufficient

to sustain the proposition that there was a sale within the State of Illinois. Gentlemen of the jury, you are instructed to find the issues for the defendant."

The judgment of the Circuit Court is affirmed.